UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| BENJAMIN CRUZ-CRUZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 5:15-CV-157-REW |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| CONLEY-MORGAN LAW GROUP, | ) | ORDER |
| PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiffs moved for partial summary judgment on eleven affirmative defenses asserted by Defendant Conley-Morgan Law Group, PLLC. DE #70. Defendant responded, DE #71, and Plaintiff replied. DE #72. The motion is ripe for consideration. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion (DE #70).

I.      **Relevant Factual and Procedural Background**

Plaintiffs are citizens of Mexico. DE #1 (Complaint) ¶ 14. In June 2013, after Defendants McKenzie Farms, Gene McKenzie, and Austin McKenzie (collectively, "Farm Defendants"), with the assistance of Defendant Conley-Morgan Law Group, PLLC, ("Conley-Morgan") secured temporary H-2A visas for each Plaintiff, Plaintiffs began work as agricultural laborers at McKenzie Farms. *Id.* ¶¶ 4, 32-33, 50. Plaintiffs sued under various theories to recover damages for unpaid wages, breach of contract, and forced labor resulting from the alleged actions of Defendants during the Plaintiffs' employment term with the Farm Defendants. *Id.* ¶¶ 1-8.

On January 15, 2016, Plaintiffs and the Farm Defendants filed a joint motion for review and approval of a settlement agreement. DE ##39 (Motion); 39-1 (Settlement Agreement and Release of Claims). Per the Agreement, Plaintiffs agreed to dismiss all claims against the "McKenzie Defendants," a defined term, and release them from any future liability in exchange for $55,000. The Agreement allocated $9,945.25 to attorney's fees and allocated $45,054.75, all designated as back wages, among the various Plaintiffs. DE #39-1, at 2-3, 5, 9. Conley-Morgan was not a party to the agreement. Following a telephonic conference with counsel for all settling parties, the Court approved the settlement agreement. *See* DE ##41 (Minute Entry Order), 42 (Order Approving Settlement Agreement). Upon joint motion of Plaintiffs and the Farm Defendants, the Court dismissed with prejudice all claims against the Farm Defendants. DE #48 (Order and Entry of Judgment).

At this time, Plaintiffs' claims persist against Conley-Morgan. Plaintiffs specifically assert two claims against Conley-Morgan and seek damages for: (1) violations of the Trafficking Victims Protection Reauthorization Act's (TVPRA) prohibition against "forced labor," *see* 18 U.S.C. §§ 1589, 1595; and (2) tortious interference with the employment contract between Plaintiffs and the Farm Defendants. DE #1 ¶¶ 144-153, 163-171. In support of these claims, Plaintiffs allege, among other things, that employees of Conley-Morgan threatened Plaintiffs with revocation of their visas and deportation if they refused to sign certain documents, turn over visa and passport documents, and continue working at McKenzie Farms. DE #1 ¶¶ 129-135.

In its Answer, Conley-Morgan pleaded various affirmative defenses. DE #18 (Answer), at 4. Now, Plaintiffs move for partial summary judgment on all eleven of these

defenses (in the "Second Defense") arguing that Conley-Morgan has failed to come forward with any evidence to meet its affirmative burden of proof. In support of this argument, Plaintiffs produced copies of Conley-Morgan's responses and answers to Plaintiffs' requests for production and interrogatories. DE ##70-2 (Interrogatories), 70-4 (Request for Production). In each, when asked to produce documents or identify particulars related to the affirmative defenses, respectively, Conley-Morgan essentially answered that it had neither documents nor facts to support the defenses. *Id.* Conley-Morgan never supplemented these discovery responses. DE #70-1 (Stevick Declaration).

In the discovery, for example, Conley-Morgan repeatedly stated "none" relative to any documents it had supporting affirmative defense. DE #70-4. It similarly incanted "[n]one at this time" regarding factual details pertaining to the listed affirmative defenses. DE #70-2. The document response occurred on January 27, 2016, and the interrogatory responses on March 15, 2016. Importantly, Conley-Morgan answered the interrogatories only after the Court ordered it to do so. DE #49. The Court required Conley-Morgan to "completely respond" regarding affirmative defenses, which was to include an appropriate answer "[i]f facts exist to support an affirmative defense." *Id.* Needless to say, the state of the record, never supplemented, is that Conley-Morgan denied the existence of any facts or documents relative to these defenses.

Conley-Morgan responded to the motion, DE #71, and Plaintiffs replied. DE #72. The matter is ripe for decision.

## II.     Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2553; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.

Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

This framework applies to summary judgment motions targeting a defendant's affirmative defenses. *See Resolution Trust Corp. v. Metropole Bldg. Ltd. P'ship*, 110 F.3d 64, 1997 WL 160330, at *1-2 (6th Cir. 1997) (table) ("But *Celotex* held that there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.' Appellants cite no authority whatever (which is not surprising since there is none) in support of their claim that because in this case the moving party is the plaintiff, the rules are different." (quoting *Celotex Corp.* 106 S. Ct. at 2553)); *EEOC v. Skanska USA Bldg., Inc.*, 80 F. Supp. 3d 766, 780 (W.D. Tenn. 2015) ("When the nonmoving party in a summary judgment motion bears the burden of proof at trial, Rule 56 requires them to go beyond the

pleadings and designate specific facts showing that there is a genuine issue for trial. Skanska bears the burden of proof at trial as to affirmative defenses, but offered no facts in support of these equitable defenses in response to [Plaintiff's] Motion for Summary Judgment." (citation and quotation marks omitted)).[1]

## III.    Analysis

Plaintiffs contend that Conley-Morgan has provided no evidence in discovery to support the affirmative defenses enumerated. DE #70-5, at 3-5. During briefing, Conley-Morgan conceded that the following affirmative defenses are no longer applicable in light of discovery and should be dismissed: laches, arbitration and award, assumption of risk, contributory negligence, estoppel, fellow servant, illegality, and statute of limitations. DE #71, at 2. Defendant, however, contests, nominally at least, summary judgment as to the affirmative defenses of payment, accord and satisfaction, and release and waiver. *Id.* at 3-8. Defendant primarily argues: "Based on the settlements with McKenzie Farms and the payment through the Department of Labor . . . [t]he affirmative defense of Payment, accord and satisfaction and Release/Waiver are properly pled to prevent the Plaintiffs from recovering duplicative damages." *Id.* at 3.

---

[1] In outlining the standard, Defendant cites several cases interpreting Rule 8(c) and the pleading requirements for affirmative defenses. *See Davis v. Sun Oil Co.*, 148 F.3d 606, 614 (6th Cir. 1998) (discussing affirmative defense pleading requirements in the context of a motion to strike); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (discussing situations where failure to plead an affirmative defense does not result in waiver of said defense); *N.H. Ins. Co. v. Marinemax of Ohio, Inc.*, 408 F. Supp. 2d 526, 530 (N.D. Ohio 2006) (addressing affirmative defense pleading adequacy in the context of motion to strike under Rules 8 and 12); *Paducah River Painting, Inc. v. McNational Inc.*, No. 5:11-CV-00135-R, 2011 WL 5525938, at *1, 5 (W.D. Ky. Nov. 14, 2011) (same). In this motion, however, Plaintiffs do not allege that Defendant failed to adequately plead the affirmative defenses; instead, they seek summary judgment on the asserted defenses. Accordingly, and as defined above, the summary judgment standard applies. The cases cited by Defendant are inapposite.

In the response, Defendant primarily cites Plaintiffs' settlement agreement with the Farm Defendants (DE #39-1) as providing factual support for each of the three remaining defenses. However, Conley-Morgan also references non-record evidence, specifically alleged payments received on Plaintiffs' lost wage claims resulting from a Department of Labor investigation[2] and excerpts from various Plaintiff depositions. A party opposing summary judgment must support their arguments by "citing to particular parts of materials *in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Without the depositions or DOL settlement documents in the record, the Court cannot properly consider the materials and assertions in determining the motion for summary judgment. *Cf. Pearce v. Faurecia Exhaust Systems, Inc.*, 529 F App'x 454, 458 (6th Cir. 2013) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and, are not enough to defeat a well-supported motion for summary judgment."). The Court thus ignores the non-record theories.[3] The Settlement Agreement is in the record but surely not cited by Conley-Morgan in discovery as supportive of the defenses. The Agreement was in the record **before** either of the discovery responses at issue, and Conley-Morgan did not list or in any way reference the Agreement as impacting, supporting, or pertaining to any affirmative defense.

---

[2] In fact, the only record evidence related to the DOL investigation is the letter submitted by Plaintiffs in reply. *See* DE #72-1. Per the letter, the DOL investigation ended in a fine levied against the Farm Defendants, but it did not include any payments to Plaintiffs.

[3] Further, Conley-Morgan only passingly mentions Accord and Satisfaction, devoting no argument to the defense. The Court will not strain to analyze what a party abandons. As such, the Court is treating that defense as tacitly withdrawn by Conley-Morgan.

### A. Payment

The Court first addresses Defendant's affirmative defense of payment. "The law . . . does not permit a plaintiff to recover double payment." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 91 S. Ct. 795, 811 (1971) (discussing the potential applicability of a defense of payment based on funds paid by a codefendant and further stating: "It is settled that entirely apart from any release, a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another coconspirator[.]"); *see also Hudson v. Insteel Indus., Inc.*, 5 F. App'x 378, 387 (6th Cir. 2001) ("It is well-established that when a party is entitled to recovery of the same damages under separate causes of action, the trial court may allow recovery only once." (citing *General Tel. Co. v. EEOC*, 100 S. Ct. 1698, 1708 (1980))). Here, Conley-Morgan contends that Plaintiffs' receipt of monies from the Farm Defendants, as a result of the court-approved settlement agreement, will, at a minimum, offset any remaining damages potentially attributable to or recoverable from Conley-Morgan. DE #71, at 5. Plaintiffs counter that settlement payments from the Farm Defendants consisted solely of back wages (except for a payment for attorney's fees and costs), a category never sought as a damage claim against Conley-Morgan. DE #72, at 5. Plaintiffs argue that neither the TVPRA nor the tortious interference claims against Conley-Morgan include damages for back wages; accordingly, they claim the settlement with the Farm Defendants does not support any defense of payment on behalf of Conley-Morgan.

Unpaid wages are potentially recoverable under both claims advanced against Conley-Morgan. Under the TVPRA, Plaintiffs "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). These recoverable damages encompass both

compensatory and punitive damages. *See Francisco v. Susano*, 525 F. App'x 828, 833-36 (10th Cir. 2013). As compensatory damages, courts have awarded both lost wages, whether statutory minimum wages under the FLSA or higher wages based on prevailing wages for the work performed or an agreed contract rate, and noneconomic damages, such as emotional distress and pain and suffering, resulting from forced labor and similar working conditions. *See Lipenga v. Kambalme*, ___ F. Supp. 3d ___, No. GJH-14-3980, 2016 WL 6662252, at *8-10 (D. Md. Nov. 9, 2016); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 24-27 (D.D.C. 2013); *Garung v. Malhotra*, 851 F. Supp. 2d 583, 594-95 (S.D.N.Y. 2012). Similarly, under Kentucky law, Plaintiffs could recover damages resulting from the Farm Defendant's breach of the employment contract intentionally and knowingly caused (if proven) by Conley-Morgan's tortious actions. *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012) (identifying the elements for tortious interference with contract under Kentucky Law: "[Plaintiff] must show: (1) the existence of a contract; (2) [Defendant's] knowledge of the contract; (3) that [Defendant] intended to cause a breach of that contract; (4) that [Defendant's] actions did indeed cause a breach; (5) that damages resulted to [Plaintiff]; and (6) that [Defendant] had no privilege or justification to excuse its conduct."). Damages resulting from the tortious actions of a third-party relative to a contract can overlap with damages recoverable against the breaching party. *See, e.g.*, *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003) (discussing tortious interference claim and need to prevent potential double damages from contract violations).

In the complaint, Plaintiffs simply claim "damages" resulting from the alleged forced labor conduct, which, per the above, could include lost wages. Plaintiffs specifically list "pay below the AEWR [adverse effect wage rate][4] throughout the course of the contract" as damage resulting from Conley-Morgan's tortious interference. DE #1 ¶ 169. If substantiated at trial, Plaintiffs could recover compensation for lost wages resulting from Conley-Morgan's conduct. The Settlement Agreement is specific record evidence of at least partial payment to Plaintiffs of back wages potentially here recoverable against Conley-Morgan. Plaintiffs argue that "the back wage payments made to [Plaintiffs] . . . were for claims entirely distinct and separate from those [Plaintiffs] are pursuing against Conley Law Group for TVPRA and tortious interference[.] . . . No portion of the funds paid to [Plaintiffs] by [the Farm Defendants] was for damages under the TVPRA or for [tortious] interference by the Conley Law Group." DE #72, at 5-6. These arguments, however, presume particularization of the damages sought against Conley-Morgan, information not yet before the Court. Based on the Settlement Agreement and wage payments, Conley-Morgan may reasonably argue that Plaintiffs have at least partially recovered some of the potential damages available under their TVPRA and tortious interference claims. How those arguments ultimately fair in the face of Plaintiffs' case merits is a question ultimately to be addressed at trial. At this stage and on this record, Conley-Morgan has presented evidence sufficient to create issues of

---

[4] In order to obtain H-2A visas, an employer must offer a wage rate to H-2A workers "that is the highest of the AEWR in effect at the time recruitment for a position is begun, the prevailing hourly wage or piece rate, or the Federal or State minimum wage." 20 C.F.R. § 655.1308(a). The AEWR is based on wage data specific to the occupation, skill level, and geographic area of employment. *Id.* § 655.1308(e). The AEWR works, in part, to ensure wages paid to foreign workers "will not adversely affect the wages and working conditions of U.S. workers similarly employed." *Id.* § 655.103(a).

material fact as to the affirmative defense of payment. Although Conley-Morgan never specified the Settlement Agreement as a defensive document, the Court would not allow double-recovery, should the danger of one appear. As such, and to the extent any potential for duplicate compensation exists, Conley-Morgan may utilize the Settlement Agreement in its defense at the appropriate time. Given that Plaintiffs assert that they are making no wage claim against Conley-Morgan, DE #72, at 5, the Court sees no prejudice and little practical impact in the ultimate application of this ruling. However, the Court will allow the defense to persist simply and solely as a marker against double recovery.

### B. Release and Waiver

The Court next turns to Conley-Morgan's release and waiver defenses. "A release is a private agreement amongst parties that gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 107 (Ky. 2003) (quoting 66 Am. Jur. 2d *Release* § 1 (2001)). Distinctly, "[w]aiver is the 'voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon.'" *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-00208-CRS, 2015 WL 7431044, at *3 (W.D. Ky. Nov. 20, 2015) (quoting *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. 2001)).

Again, Conley-Morgan did not identify the Settlement Agreement as an affirmative defense source. Regarding the waiver and release issue, Conley-Morgan seeks the benefit of the Settlement Agreement insofar as Plaintiffs released the Farm

Defendants as principal,[5] *i.e.,* that a release of the Farm Defendants effectively releases

agents under the principal. First, the Potter case, *Potter v. Chaney*, 290 S.W.2d 44, 46

(Ky. 1956), which involves contractual liability of the agent of a disclosed principal,

hardly carries the freight Conley-Morgan suggests. An agent is always potentially liable

for his own *tortious* conduct under Kentucky law. *See Carr v. Barnett*, 580 S.W.2d 237,

240 (Ky. Ct. App. 1979) ("Thus, we note that an agent is personally liable for his own

tortious acts even though performed within the scope of his employment and under

conditions which impose liability upon the principal also."). Further, the federal claim

here extends liability to a "perpetrator" and those knowingly benefitting from the suspect

endeavor. 18 U.S.C. § 1595(a). The argument fails on the authority here presented.

Plaintiffs seek to pin Conley-Morgan's liability only on the direct conduct of

Conley-Morgan and its agents. Thus, and because Plaintiffs' claims do not hinge on an

agency theory, the Court declines to assess further the effect of releasing the Farm

Defendants. The Court **GRANTS** the motion as to the Conley-Morgan argument but also

will not allow Plaintiffs to pursue a trial theory that would be inconsistent with its

position in summary judgment briefing.[6]

## IV. Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN**

**PART** Plaintiffs' motion for partial summary judgment (DE #70). The Court **GRANTS**

the motion as to all affirmative defenses except Defendant's affirmative defense of

---

[5] Conley-Morgan does not suggest it should be considered within the scope of the defined "McKenzie Defendants" as a direct party to the release scope.

[6] The extent to which Conley-Morgan's Third Defense figures into the argument is unknown. This decision does not address capacity as a defense.

payment. Having produced evidence that the defense may apply, Defendant may present,

at trial and as appropriate, the affirmative defense of payment.

This the 15th day of May, 2017.

Signed By:

*Robert E. Wier*

United States Magistrate Judge